UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILFREDO ALFARO ACOSTA,

                       Plaintiff,

                                              9:22-CV-1259
v.                                         (TJM/ML)

UNITED STATES OF AMERICA,

                       Defendant.
_____

APPEARANCES:                             OF COUNSEL:

WILFREDO ALFARO ACOSTA
  Plaintiff, *Pro Se*
Devens Federal Medical Center
Inmate Mail/Parcels
Post Office Box 879
Ayer, Massachusetts 01432

CARLA B. FREEDMAN                        KAREN LESPERANCE, ESQ.
N.D.N.Y. United States Attorney         Assistant United States Attorney
  Counsel for Defendant
445 Broadway, Room 218
Albany, New York 12207-2924

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT and RECOMMENDATION</u>

Currently before the Court, in this Federal Tort Claims Act ("FTCA") action filed by

Wilfredo Alfaro Acosta ("Plaintiff") against the United States of America ("Defendant"), is

Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1).  (Dkt. No. 13.)  For the reasons set forth below, I recommend that Defendant's motion

be granted.

I.     **RELEVANT BACKGROUND**

A.     **Procedural History**

On November 28, 2022, Plaintiff commenced this action by the filing of a Complaint, accompanied by a motion for leave to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 1, 2.)

On December 20, 2022, Senior United States District Judge Thomas J. McAvoy issued a Decision and Order that granted Plaintiff leave to proceed IFP and ordered that Plaintiff's FTCA negligence claim against Defendant survived the Court's *sua sponte* review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and required a response.  (Dkt. No. 7.)  Judge McAvoy's Decision and Order thoroughly outlined the allegations and claim set forth in the Complaint. (Dkt. No. 7 at 4-5.)

B.     **Parties' Briefing on Defendant's Motion to Dismiss**

1.     **Defendant's Memorandum of Law**

Generally, in support of its motion to dismiss, Defendant asserts that the Inmate Accident Compensation Act ("IACA") is the exclusive remedy for federal inmates who suffer work-related injuries.  (Dkt. No. 13, Attach. 1 at 5-6.)  Defendant argues that when an inmate's injury is covered under IACA, the inmate is precluded from seeking compensation under the FTCA, and thus, the district court lacks jurisdiction over any action against Defendant seeking compensation for Plaintiff's work-related injury under the FTCA.  (*Id.*)

2.     **Plaintiff's Opposition**

Generally, in opposition to Defendant's motion, Plaintiff argues that he sought redress via the IACA but that "[n]othing came of" his IACA claim.  (Dkt. No. 17.)  Plaintiff argues that the IACA is an unavailable remedy, equivalent to no remedy at all, and thus, the Court has jurisdiction to grant relief pursuant to the FTCA.  (Dkt. No. 17.)

## II.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Wagner v.*

*Hyra*, 518 F. Supp. 3d 613, 622 (N.D.N.Y. 2021) (Hurd, J.) (quoting *Forjone v. Dep't of Motor*

*Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (Hurd, J.)).  "The plaintiff bears the burden

of proving subject matter jurisdiction by a preponderance of the evidence."  *Forjone*, 414 F.

Supp. 3d at 298 (cleaned up).

"The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions:

(i) facial motions and (ii) fact-based motions." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586

(S.D.N.Y. 2020); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("A

Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-

based.").  "A facial Rule 12(b)(1) motion is one based solely on the allegations of the complaint

or the complaint and exhibits attached to it." *Nicholas*, 433 F. Supp. 3d at 586 (cleaned up).  "A

plaintiff opposing such a motion bears no evidentiary burden." *Id.*  "Instead, to resolve a facial

Rule 12(b)(1) motion, a district court must determine whether the complaint and its exhibits

allege facts that establish subject matter jurisdiction." *Id.*  "And to make that determination, a

court must accept the complaint's allegations as true and draw all reasonable inferences in favor

of the plaintiff." *Id.*

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion,

proffering evidence beyond the complaint and its exhibits." *Nicholas*, 433 F. Supp. 3d at 586

(quoting *Carter*, 822 F.3d at 57).  "In opposition to such a motion, a plaintiff must come forward

with evidence of their own to controvert that presented by the defendant, or may instead rely on

the allegations in their pleading if the evidence proffered by the defendant is immaterial because

it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.* (cleaned up). "If a defendant supports his fact-based Rule 12(b)(1) motion with material and controverted extrinsic evidence, a district court will need to make findings of fact in aid of its decision as to the subject matter jurisdiction." *Id.*

## III.    ANALYSIS

After carefully considering the matter, I recommend that Defendant's motion to dismiss be granted for the reasons set forth in its memorandum of law. (Dkt. No. 13, Attach. 1.) The following is intended to supplement, not supplant, those reasons.

The IACA provides "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). The IACA is the exclusive remedy for federal inmates who suffer work-related injuries. *Id.*; 28 C.F.R. § 301.319 (citing *U.S. v. Demko*, 385 U.S. 149 (1966)) ("Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Tort Claims Act."). In *Demko*, the Supreme Court squarely rejected the theory that a prisoner covered by the IACA may also bring suit under the FTCA, reasoning that "there is no indication of any congressional purpose to make the compensation statute in 18 U.S.C. § 4126 non-exclusive." 385 U.S. at 152. In addition to the workplace injury itself, courts in the Second Circuit have found that the IACA serves as the exclusive remedy when an inmate's "work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel." *Giraldo v. United States*, 14-CV-5568, 2015 WL 4078751, at *1 (E.D.N.Y. July 6, 2015) (quoting *Barrett v. Goldstein*, 07-CV-2483, 2009 WL 1873647, at *4 (E.D.N.Y. June 29, 2009)).

Plaintiff's claim falls squarely within the scope of the IACA.  When Plaintiff allegedly fell, he was engaged in a work activity in connection with the food service operation at Federal Correctional Institution Raybrook.  (Dkt. No. 1 at ¶¶ 5, 7.)  "Because [this is] admittedly [a] work-related injur[y], and because the IACA provides the exclusive remedy for [this] claim[], including any aggravation of th[is] injur[y] resulting from medical malpractice by prison officials, [Plaintiff] is barred from recovery under the FTCA."  *Treasure v. United States*, 17-CV-0971, 2019 WL 1243877, at *3 (E.D.N.Y. Mar. 18, 2019).

As a result, I recommend that Plaintiff's FTCA negligence claim be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1); and it is further respectfully

**RECOMMENDED** that Defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 13) be **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[1]

**NOTICE**: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[2]  Such

---

[1]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[2]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 17, 2023
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

2015 WL 4078751
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Roque Felix Genao GIRALDO, Plaintiff,

v.

UNITED STATES of America; Bureau of Prisons;
Metropolitan Detention Center; United States
Marshals Service; Brooklyn Hospital, Defendants.

No. 14–CV–5568 (JG).
|
Signed July 6, 2015.

**Attorneys and Law Firms**

Roque Felix Genao Giraldo, Moshannon Valley Correctional
Institution, Philipsburg, PA, pro se.

Kelly T. Currie, Acting United States Attorney, Eastern
District of New York, by: Dara A. Olds, Brooklyn, NY, for
Federal Defendants.

*MEMORANDUM AND ORDER*

JOHN GLEESON, District Judge.

**\*1** Roque Felix Genao Giraldo brings this action seeking
damages from an injury he sustained to his thumb while
he was an inmate at the Metropolitan Detention Center
("MDC"). He asserts claims against United States of
America, the Bureau of Prisons, the MDC, and the
United States Marshals Service (together, the "Federal
Defendants"), and Brooklyn Hospital. On March 31, 2015,
I dismissed Giraldo's claims against Brooklyn Hospital. *See
Giraldo v. United States,* No. 14–CV–5568 (JG), 2015 WL
1476409 (E.D.N.Y. Mar.31, 2015), ECF No. 35. The Federal
Defendants now move to dismiss for lack of subject matter
jurisdiction. I heard oral argument on May 13, 2015, at which
Giraldo appeared by video conference. For the reasons stated
below, the Federal Defendants' motion is granted.

I assume familiarity with the facts and legal standards as
stated in my March 31 written opinion. Giraldo does not
specify whether he asserts claims under the Federal Tort
Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* or

Eighth Amendment violations under 42 U.S.C. § 1983
and *Bivens v. Six Unknown Named Agents of Fed. Bureau
of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
(1971). I previously construed his complaint as bringing both
causes of action, and state law claims for medical malpractice
and negligence as well. *Giraldo,* 2015 WL 1476409, at \*1–2.
The Federal Defendants argue that Giraldo's claims must be
dismissed for lack of subject matter jurisdiction because (1)
the Inmate Accident Compensation Act ("IACA"), 18 U.S.C.
§ 4126, bars Giraldo's claims; (2) Giraldo failed to exhaust
administrative remedies under the FTCA; and (3) Giraldo
fails to state a claim for violation of his constitutional rights.

A. *The Inmate Accident Compensation Act*
The Federal Defendants assert that the IACA bars Giraldo's
tort action. The IACA provides "compensation to inmates
or their dependents for injuries suffered in any industry or
in any work activity in connection with the maintenance
or operation of the institution in which the inmates are
confined." 18 U.S.C. § 4126(c)(4). This statutory scheme is
the exclusive remedy for prisoners who sustain work-related
injuries while they are in prison. *United States v. Demko,*
385 U.S. 149, 152–54, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966);
*see also* 28 C.F.R. § 301.319 ("Inmates who are subject
to the provisions of these Inmate Accident Compensation
regulations are barred from recovery under the Federal Tort
Claims Act."); *Barrett v. Goldstein,* No. 07–CV–2483 (RJD)
(LB), 2009 WL 1873647, at \*4 (E.D.N.Y. June 29, 2009)
(citing *Demko,* 385 U.S. at 152). Courts in this Circuit
have also found that the IACA serves as the exclusive
remedy for inmates "when a work-related injury is further
aggravated by negligence or medical malpractice on the part
of prison medical personnel." *Barrett,* 2009 WL 1873647, at
\*4 (quoting *Moore v. United States,* No. 85–CV–1151, 1988
WL 70025, at \*3 (N.D.N.Y. June 30, 1988)).

In Giraldo's opposition to the defendants' motion, he says
that, "even thoug [h] the accident that caused his injury
had occurred during the timeframe of his work-shift," the
accident "probably" was not work-related because it occurred
"at lunch time in an area specifically [designed] to eat ...."
Pl. Opp. at 3you ca. However, in the affidavit submitted with
Giraldo's opposition, he asserts that he sustained the injury
in question "while working in the main kitchen at MDC–
BROOKLYN." *Id.* at 15 (citing Pl. Aff., Feb. 2, 2015, ECF
No. 28, ¶ 4). [1] In the affidavit, Giraldo says that the accident

occurred while Giraldo was sitting down to eat lunch at the scheduled time for inmate orderlies. Pl. Aff. ¶ 4.

**\*2** Under the applicable regulations, an injury is "work-related" if it is "proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). *See also Dunn v. U.S. Fed. Bureau of Prisons,* No. 03–CV–1928 (JBA), 2006 WL 695805, at \*3–4 (D.Conn. Mar.20, 2006) (injuries were "work-related" under the IACA when sustained while inmate was leaving her work area); *Codianni– Robles v. United States,* No. 04–CV–1725 (JCH), 2005 WL 2098837, at \*1–2 (D.Conn. Aug.29, 2005) (denying defendant's motion to dismiss because inmate's injuries were not clearly "work-related" when she alleged she was walking to a social gathering to discuss a work-related matter); *Gomez v. Warden of Otisville Corr. Facility,* No. 99–CV–9954 (AGS), 2000 WL 1480478, at \*1–2 (S.D.N.Y. Sept.29, 2000) (inmate's injuries were clearly "work-related" when he was injured when walking from one work assignment to another).

The Federal Defendants point to a series of cases in other circuits finding that the IACA applies even if an inmate is on a break from work or traveling to or from a break when the injury occurs. *See* Def. Reply at 3–4 (citing cases including *Mays v. United States,* No. 13–CV–0522, 2013 WL 6709761, at \*3 (M.D.Pa. Dec. 18, 2013) *aff'd* 567 F. App'x 81, 82 (3d Cir.2014)). In *Mays,* the Third Circuit affirmed the district court's decision that an inmate who slipped and fell on a wet floor during a scheduled break time was limited to remedies prescribed by the IACA. *See* 567 F. App'x at 81–82 (also citing *Wooten v. United States,* 437 F.2d 79, 80 (5th Cir.1971) (per curiam)). This exact set of facts has not been decided by the Second Circuit. However, I am persuaded by the reasoning in *Mays* and by the cases from this Circuit discussed above. Therefore, even if Giraldo were eating lunch during a scheduled break when he sustained the injury to his thumb, he is limited to recovery under the IACA.

For these reasons, Giraldo's tort claim under the FTCA is dismissed. [2] To assert a claim under the IACA, Giraldo must submit a claim to the Institution Safety Manager or Community Corrections Manager between 45 and 15 days prior to his release. *See* 28 C.F.R. § 301.303(a); *see generally* 28 C.F.R. §§ 301.101–319. The claim may be filed by completing form BP–AO658, which is available at http://www.bop.gov/policy/forms/BP_A0658.pdf.

B. *Giraldo's Additional Claims*

The question of whether Giraldo may assert a *Bivens* claim against federal officials in addition to his claim against the United States under the IACA has not been decided by the Second Circuit. *See Smith v. United States,* 561 F.3d 1090, 1102 (10th Cir.2009) (concluding that the IACA did not preclude the plaintiff's *Bivens* claim and noting that only the Seventh Circuit had previously considered the issue). As the Tenth Circuit discussed in *Smith,* the Supreme Court has held that a *Bivens* remedy may be available against prison officials even where the inmate asserts a FTCA claim. *Id.* at 1099–1100 (citing *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)). The issue has not been decided by the Supreme Court or the Second Circuit as it relates to the availability of a *Bivens* claim when an inmate brings a claim under the IACA.

**\*3** Assuming without deciding that Giraldo could bring a *Bivens* claim in addition to the IACA claim, Giraldo's *Bivens* claim would not survive a motion to dismiss. First, Giraldo sued the United States and its agencies, and not the federal officials involved in his accident. *Bivens* actions are properly asserted against federal officials, not the United States. *See Schweitzer v. Dep't of Veterans Affairs,* 23 F. App'x 57, 59 (2d Cir.2001); *see also F.D.I.C. v. Meyer,* 510 U.S. 471, 485, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Even if Giraldo had sued the prison officials who allegedly caused the deprivation of rights, his Eighth Amendment claim would fail for the reason stated in my March 31 opinion, *i.e.,* the allegations fail to establish that the harm caused to Giraldo's thumb was sufficiently serious. *See Giraldo,* 2015 WL 1476409, at \*3 (citing *Barrett,* 2009 WL 1873647, at \*3).

Finally, because I grant the Federal Defendants' motion to dismiss Giraldo's federal claims, I decline to exercise supplemental jurisdiction over any related state law claims discernible in Giraldo's complaint. *See* 28 U.S.C. § 1367(c)(3) (district court "may decline to exercise supplemental jurisdiction" over related state law claims if the court "has dismissed all claims over which it has original jurisdiction").

## CONCLUSION

For the reasons discussed above, the Federal Defendants' motion to dismiss is granted. The Clerk is respectfully directed to close the case.

So ordered.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4078751

## Footnotes

1    In my opinion dismissing Brooklyn Hospital's claims, I decided to consider Giraldo's affidavit submitted in opposition to Brooklyn Hospital's motion as a supplement to his complaint.

2    Because I find that the IACA provides Giraldo's exclusive remedy for his tort action against the United States, I need not consider the additional evidence submitted by the Federal Defendants in support of their argument that Giraldo failed to exhaust administrative remedies under the FTCA. *See* Fed. Def. Ex. A, ECF No. 33 (Bork Decl.). Giraldo admits he "probably" did not exhaust the administrative remedies necessary under the FTCA as stated in 28 U.S.C. § 2401(b). *See* Pl. Opp. at 15.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    3

2009 WL 1873647
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Robert BARRETT, Plaintiff,
v.
Dr. Peter GOLDSTEIN, Clinical Director; J. Saint–
Preux, MLP, MDC–Brooklyn; M. Borecky, M.D.,
Medical Officer, MDC–Brooklyn, Defendants.

No. 07 CV 2483(RJD)(LB).
|
June 29, 2009.

West KeySummary

1    **Prisons** 🔑 Particular Conditions and
Treatments

**Sentencing and Punishment** 🔑 Medical care
and treatment

An inmate's injury did not constitute a serious
medical condition for purpose of an Eighth
Amendment *Bivens* claim. The inmate injured
his right ring finger when a housing unit door
closed on his hand while he was working on trash
detail at the prison. The inmate was examined
four days later. His finger was then splinted
and x-rays were ordered. The x-rays indicated
that the inmate's finger had a non-displaced
chip fracture and soft tissue swelling. U.S.C.A.
Const.Amend. 8.

7 Cases that cite this headnote

**Attorneys and Law Firms**

Robert Barrett, Philadelphia, PA, pro se.

Gail A. Matthews, United States Attorneys Office, Eastern
District of New York, Brooklyn, NY, for Defendants.

**MEMORANDUM & ORDER**

DEARIE, Chief Judge.

**\*1** Plaintiff Robert Barrett brings this *pro se* action
against three medical personnel working for the Metropolitan
Detention Center (MDC) in Brooklyn, alleging medical
malpractice and constitutional violations stemming from the
treatment of a finger injury plaintiff sustained while working
as an orderly at the MDC. Defendants move to dismiss, or, in
the alternative, for summary judgment. For the reasons stated
below, defendants' motion to dismiss is granted.

**BACKGROUND**

Plaintiff was incarcerated at the MDC in Brooklyn from
February 22, 2006 until December 7, 2006, at which point he
was transferred to FCI Fairton. He was released from custody
on April 1, 2009. On April 21, 2006, Plaintiff injured his
right ring finger when a housing unit door closed on his hand
while working on trash detail at the MDC. Am. Compl. 3.
Plaintiff alleges that after the incident he immediately notified
a corrections officer of his injury, and was told to complete
a "cop-out" informing the MDC's medical department of
his injuries. Am. Compl. 3. Defendant J. Saint–Preux, a
Mid–Level Provider (MLP) at the MDC, examined plaintiff
four days later, on April 25, 2006. Plaintiff alleges that he
told Saint–Preux that he was "in a great deal of pain and
believed his finger to be broken." Am. Compl. 3. Saint–Preux
splinted plaintiff's finger, ordered x-rays, and prescribed pain
relievers. The x-ray results indicated that plaintiff's finger had
a non-displaced chip fracture and soft tissue swelling.

Plaintiff was seen by Dr. Goldberg on June 9, 2006, who
plaintiff alleges told him that nothing could be done for
his finger. Am. Compl. 3. Dissatisfied with the diagnoses,
plaintiff initiated an administrative appeal requesting a second
opinion with an outside orthopedic surgeon. During an
examination by Dr. Borecky on September 6, 2006, plaintiff
reiterated his request that he be seen by an orthopedic
surgeon. Am. Compl, 3. Dr. Borecky denied that request,
explaining to plaintiff that his injury did not require such
a specialized consult, but allegedly did tell plaintiff that a
contract orthopedist would eventually evaluate plaintiff.

On October 11, 2006, plaintiff was seen by Dr. Kohanowitz,
the contract orthopedist. Kohanowitz diagnosed plaintiff with
"mallet finger," and determined after an x-ray that plaintiff
had a dorsal plate fracture in the base of his finger. Plaintiff
alleges that Dr. Kohanowitz told him that the splint that

had previously been placed on plaintiff was incorrect. Am. Compl. 3. Furthermore, plaintiff claims that Kohanowitz stated that "had the x-rays been read properly it would have revealed that the tendon in the finger had been damaged as well." *Id.* Dr. Kohanowitz referred plaintiff to a hand specialist and issued a splint. Plaintiff was seen by the specialist on December 6, 2006, who similarly diagnosed plaintiff with mallet finger, and recommended that plaintiff wear a splint for six weeks. Plaintiff allegedly refused to do so. Plaintiff was transferred to FCI Fairton the following day, where additional x-rays were taken on December 12, 2006.

**\*2** Plaintiff originally filed this action on June 19, 2007. His amended complaint, filed on March 28, 2008, alleges that he "suffered from Deliberate Indifference by staff at MDC–Brookly (sic), Medical Department and suffers permanent disfigurement of his finger and lost of quality of life." Am. Compl. 3. Furthermore, plaintiff concludes that "a cause of action exists in this case, and the defendants, cannot deny the approximate cause and or the resulting 'damage' because of the defendant's deliberate indifference to plaintiff's dire medical condition." *Id.* Plaintiff characterizes his claim as a *Bivens* action, but also makes repeated references to the Federal Tort Claims Act (FTCA).

## DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss Standard

As the Supreme Court has recently held, in order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, —— (2009) *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 1949. The Supreme Court further noted that '[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* However, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp,* 521 F.3d 202, 214 (2d Cir.2008), *quoting Erickson v. Pardus,*

551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citations and quotation marks omitted). [1]

### B. Bivens Claim

Plaintiff brings this action against three medical officials at the MDC in their individual capacities, alleging constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As a convicted inmate, plaintiff's allegations of "Deliberate Indifference" in the treatment of his medical condition are construed as alleging violations of the Eighth Amendment's prohibition on cruel and unusual punishment. U.S. Const. amend. VIII. The Eight Amendment "applies to prison officials when they provide medical care to inmates." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *quoting Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order "to establish an unconstitutional denial of medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Hathaway* at 66, *quoting Estelle* at 104 (internal quotation marks omitted).

First, a plaintiff must allege that his condition is "in objective terms, 'sufficiently serious.' " *Hathaway,* 37 F.3d at 66 (2d Cir.1994). *quoting Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Such a condition "exists where the failure to treat a prisoner's condition could result in significant further injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (internal citations omitted). Second, the "charged official must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998), *quoting Fanner v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

**\*3** Plaintiff suffered a broken finger. While the injury undoubtedly caused plaintiff significant pain, "[m]ost courts have held that a broken finger does not constitute a serious

medical need." *Revenell v. Van Per Steeg,* 2007 U.S. Dist. LEXIS 17868 (S.D.N.Y. Mar. 14, 2007). *See also Johnson v. Snow,* 2008 U.S. Dist. LEXIS 41823, at *7–9 (N.D.N.Y May 27, 2008) (chip fractures in hand not considered serious medical condition); *Henderson v. Doe,* 1999 U.S. Dist. LEXIS 8672 at *6 (S.D.N.Y. June 10, 1999) (broken pinky finger not serious medical condition); *Anderson v. Chou,* 2006 U.S. Dist. LEXIS 65305 at *7 (E.D.N.Y. Sept. 12, 2006) (injury to the third finger of right hand found to be minor); *Rivera v. Johnson,* 1996 U.S. Dist. LEXIS 14192, at *6–7 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection."). Accordingly, the Court finds that plaintiff's injury does not constitute a serious medical condition for purposes of an Eighth Amendment *Bivens* claim.

Even if the Court were to hold that plaintiff's broken finger satisfied the first element of a *Bivens* medical claim, however, his claim would fail because none of plaintiff's allegations suggests that any of the three defendants had a sufficiently culpable state of mind to establish deliberate indifference.

Plaintiff alleges that Dr. Kohanowitz told him that the splint issued by defendant Saint–Preux was incorrect, and that Saint–Preux misread the x-rays, thus failing to notice damage to plaintiff's tendon. Am. Compl. 3. At least one of the administrative complaints attached to plaintiff's amended complaint suggest that plaintiff desired corrective surgery for his finger, which was denied. Am. Compl., Ex. C.

At best, plaintiff's allegations amount to a medical malpractice claim. In fact, plaintiff himself describes his lawsuit as a "Bivens Action" alleging "Medical Malpractice, in violation of his Constitutional rights ..." Am. Compl. 1. However, mere malpractice allegations do not rise to the level of a constitutional violation in the context of a *Bivens* claim. As the Supreme Court noted in *Estelle v. Gamble,* "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

While plaintiff may have desired corrective surgery, plaintiff makes no allegations that any medical professional— including Dr. Kohanowitz—had ever suggested that such surgery was appropriate. A "prisoner's right to is to medical

care—not the type or scope of medical care which he personally desires." *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 868 (2d Cir.1970). Moreover, "mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment." *Aho v. Hughes,* 2005 U.S. Dist. LEXIS 22790 (D.Conn.2005). Ultimately there is no violation of the Eighth Amendment "[s]o long as the treatment given is adequate...." *Henderson v. Doe,* 1999 U.S. Dist. LEXIS 8672 (S.D.N.Y. June 10, 1999).

**\*4** Plaintiff's own allegations concede that defendants provided plaintiff with an extensive course of treatment, including numerous examinations, multiple x-rays, and splints. While plaintiff alleges that such care was given negligently, the critical point is that care was given. While plaintiff would have preferred corrective surgery—elective surgery that may not have even been appropriate in this case— his own allegations fail to suggest that defendants acted with any indifference to plaintiff's injury.

Because plaintiff's allegations fail to satisfy either required element of a *Bivens* claim for deliberate indifference, that claim is dismissed in its entirety.

### C. Federal Tort Claims Act (FTCA) Claim

Plaintiff clearly states that his lawsuit is a *Bivens* action. Am. Compl. 1. However, at various points plaintiff makes passing reference to the Court's jurisdiction under the Federal Tort Claims Act, and asserts that "Plaintiff has submitted a Tort claim under the (FTCA) ...." Am. Compl. 1–3. Moreover, plaintiff's opposition to defendant's motion argues that he has alleged "a Federal Tort Claim under the Federal Tort Claim Act ("FTCA") ... to recover damages for personal injury due to the April 21, 2006, injury; and the deliberate indifference by staff at MDC–Brooklyn & Medical Department, led to permanent disfigurement of his finger and loss of quality of life." Pl. Reply 2. The Court, as it must, therefore liberally construes plaintiff's complaint as asserting an FTCA claim in addition to his primary *Bivens* claim.

Plaintiff filed an administrative tort claim on September 7, 2006. Attached to plaintiff's declaration is a copy of Standard Form 95 ("Claim for Damage, Injury, or Death), which plaintiff submitted to the Northeast Regional Office of the Federal Bureau of Prisons, alleging "inadequate/negligent medical care in the treatment and care he is currently receiving for the fracture on his right hand." Pl. Dec, Ex. A. Plaintiff

received a denial of this claim on June 7, 2007, from the Northeast Regional Office, which indicated that plaintiff's claim had been considered under the FTCA, and that if plaintiff was "dissatisfied" with the decision, he could bring an action against the United States in the appropriate District Court. *Id.*

Among other purposes, the Inmate Accident Compensation System provides "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126. The Supreme Court has held that this statutory compensation scheme is the exclusive remedy for prisoners who sustain work-related injuries while incarcerated. *United States v. Demko,* 385 U.S. 149, 152, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Moreover, courts have further held that § 4126 is "the exclusive remedy when a work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel." *Moore v. United States,* 1988 U.S. Dist. LEXIS 6310, *10 (N.D.N.Y 1988). *See also R.P. v. United States,* 1980 U.S. Dist. LEXIS 13651, *3–4 (S.D.N.Y.1980).

 **\*5** Plaintiff himself describes the events surrounding his initial injury as follows: "[W]hile working on a trash detail as an Orderly, plaintiff inadvertently caught his right ring finger in the door as it was closing and smashed it." Am. Compl. 3. Because there is no dispute that plaintiff's initial injury was work-related, the Court therefore finds that it is precluded from considering plaintiff's tort claims under the FTCA. Accordingly, plaintiff's FTCA claims are dismissed for lack of subject matter jurisdiction.

The Court notes that the memorandum sent by the Bureau of Prisons (BOP) on March 16, 2007, denying plaintiff's initial tort claim, indicated that the BOP had considered plaintiff's

claim under the FTCA, Pl. Dec, Ex. A. Moreover, the denial memorandum indicated that plaintiff's FTCA claim had been "properly received" by the BOP. *Id.* Nowhere in any of the communications from the BOP was plaintiff notified that a claim should have been filed pursuant to the procedures set forth under the Inmate Accident Compensation System.

It is the Court's understanding plaintiff was released from prison on April 1, 2009. Under the applicable regulations, which require that a claim be filed no more than 60 days after an inmate's release, plaintiff would now be time-barred from making a claim under the Inmate Accident Compensation System. 28 C.F.R. 301.303(f). However, the regulations also allow claims to be filed up to one year after an inmate's release "for good cause shown." *Id.* In light of the failure of the BOP to notify or assist plaintiff in making the proper administrative claim, the Court finds that such cause surely exists in this case. Plaintiff is advised that in order to avail himself of this provision, he must submit a claim directly to the Claims Examiner, Federal Bureau of Prisons, 320 First Street NW, Washington, DC 20534. *Id.*

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted. In light of the above discussion, the Court notes that this decision in no way limits plaintiff's ability to pursue administrative relief under the Inmate Accident Compensation Act, pursuant to 28 C.F.R. 301.303(f).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1873647

---

### Footnotes

1    Because plaintiff's amended complaint is legally deficient on its face, as discussed below, the Court declines to entertain defendants' alternative motion for summary judgment.

---

2019 WL 1243877
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Reuben TREASURE, Plaintiff,

v.

UNITED STATES of America, Defendant.

17-CV-971 (RRM) (PK)
|
Signed 03/18/2019

**Attorneys and Law Firms**

Reuben Treasure, Irvington, NJ, pro se.

Susan L. Riley, United States Attorneys Office, Brooklyn, NY, for Defendant.

**MEMORANDUM AND ORDER**

ROSLYNN R. MAUSKOPF, United States District Judge

**\*1** Plaintiff Reuben Treasure, proceeding *pro se*, brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, for injuries he sustained while working as an inmate at the Metropolitan Detention Center in Brooklyn ("MDC"), and for two unrelated medical issues that arose while he was in custody and the subsequent treatment he received. (Am. Compl. (Doc. No. 15).) Before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Def. Mot. (Doc. No. 31).) For the reasons set forth below, defendant's motion is granted. Accordingly, Treasure's motion for a stay (Mot. for Stay (Doc. No. 32) ) is denied as moot.

**BACKGROUND**

The following allegations are taken from the amended complaint and are assumed to be true for the purposes of this Order.

On March 5, 2015, while Treasure was on food service work detail at the MDC, he slipped on a concrete floor due to the presence of water, grease, and waste; slammed his head; and sustained injuries to his head, neck, and wrist. (Am.

Compl. ¶¶ 2–6.) He was subsequently seen by various health professionals for these injuries on a number of occasions (*id.* ¶¶ 18–19, 22, 25–27), but Treasure alleges that the treatment he received was inadequate, in that he was often seen by nurses rather than a "qualified physician" (*id.* ¶ 24), and insufficient tests were ordered for the severity of his injuries (*id.* ¶ 43).

Treasure "purs[u]ed various internal administrative remedies," including filing forms BP-8 through BP-11. (*Id.* ¶ 28.) The BP-11 form was denied on May 13, 2016. (BP-11 Resp., Exs. to Compl. (Doc. No. 1) at 39.) [1] Treasure was instructed by letter from the Department of Justice that he needed to obtain an Inmate Accident Compensation System form, or SF-95 form, from his Safety Supervisor. (Am. Compl. ¶ 28) Treasure attempted to obtain this form from the Safety Supervisor on numerous occasions, but the Safety Supervisor refused to provide him with the form. (*Id.*)

Separately, Treasure complains of a fungal infection he contracted from working in standing water, but he does not allege when this occurred, and he does not allege whether he took any administrative remedies with respect to this harm. (*Id.* ¶ 33.)

Under "Count Two – Additional Claims," [2] Treasure complains of two other medical issues unrelated to work. First, he has suffered from an enlarged testicle after being prescribed a medication on or about February 2, 2016. (*Id.* ¶ 46.) He was sent to Brooklyn Medical Hospital, where he was diagnosed with hydrocele and a hernia. (*Id.*) These conditions have not been treated or repaired. (*Id.*) On June 27, 2017, Treasure saw a doctor who recommended surgery on his testicle, but he did not receive it as he was released from custody the next day. (*Id.*) Second, on or about June 29, 2016, Treasure was attending a class at the MDC when sewage water from an overhead pipe started to drip onto his neck. (*Id.* ¶ 47.) He developed a fungal infection there that constantly itches. (*Id.*) He was initially advised to apply ice to his fungal infection. (*Id.* ¶¶ 46, 49.) Treasure was eventually prescribed antibiotics, fungal cream, and a steroid ointment. (*Id.* ¶ 52.)

**\*2** For these two injuries, Treasure similarly alleges that the medical treatment he received was inadequate. (*Id.* ¶¶ 46, 48–52.) The complaint is silent as to whether he pursued administrative remedies relating to these issues, though in his opposition papers, he states that he "did in fact begin to exhaust his administrative remedies for these incidents.

Plaintiff started to seek remedy by filing a BP-8 form. Plaintiff never received a formal response to this grievance. After plaintiff began receiving treatment, he could not continue to file any grievances." (Pl.'s Mem. (Doc. No. 30) at 4.)

Treasure seeks a declaration that his constitutional rights were violated and compensatory damages under the FTCA. (Am. Compl. ¶¶ 58–60.)

## STANDARD OF REVIEW

Rule 12(b)(1) allows a defendant to bring a motion to dismiss for "lack of subject-matter jurisdiction." "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In determining whether a court has subject matter jurisdiction, "the court may consider relevant documents that are extrinsic to the complaint." *N.Y.S. Catholic Health Plan, Inc. v. Acad. O & P Assoc.*, 321 F.R.D. 278, 294 (E.D.N.Y. 2015) (citing *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) ). "After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citations and internal quotation marks omitted).

The Court is mindful that Treasure is proceeding *pro se*. As such, his complaint is held to a less exacting standard than a complaint drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). Because *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads Treasure's complaint to "raise the strongest arguments that [it] suggest[s]." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). Nonetheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995).

## DISCUSSION

### I. Work-Related Injuries

The exclusive remedy against the United States for federal inmates who sustain work-related injuries while they are incarcerated is governed by the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126, which provides "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." *See also* 28 C.F.R. § 301.319 (citing *United States v. Demko*, 385 U.S. 149 (1966) ) ("Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Torts Claims Act."); *Giraldo v. United States*, No. 14-CV-5568 (JG) (RML), 2015 WL 4078751, at *1 (E.D.N.Y. July 6, 2015) (describing IACA as "the exclusive remedy for prisoners who sustain work-related injuries while they are in prison"). "Courts in this Circuit have also found that the IACA serves as the exclusive remedy for inmates 'when a work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel.' " *Giraldo*, 2015 WL 4078751, at *1 (quoting *Barrett v. Goldstein*, No. 07-CV-2483 (RJD) (LB), 2009 WL 1873647, at *4 (E.D.N.Y. June 29, 2009) ).

**\*3** A "work-related injury" is "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). The term has been interpreted to include injuries sustained "even if an inmate is on a break from work or traveling to or from a break when the injury occurs." *Giraldo*, 2015 WL 4078751, at *1. *Compare id.* (injury was "work-related" when it occurred "while Giraldo was sitting down to eat lunch at the scheduled time for inmate orderlies") (collecting similar cases), *with Codianni-Robles v. United States*, No. 04-CV-1725 (JCH), 2005 WL 2098837, at *1 (D. Conn. Aug. 29, 2005) (injuries not "work-related" when sustained while "walking en route to a social gathering" and inmate was planning to discuss a work-related matter there).

Here, it is undisputed that two of the injuries alleged by Treasure are "work-related." First is the slip-and-fall incident, resulting in injuries to his head, neck, and wrist, which occurred while Treasure was "working in the kitchen performing the aforementioned [food service work detail] duties." (Am. Compl. ¶ 5.) Second is the fungal infection he contracted "on his right leg and in his toe from working in standing water." (*Id.* ¶ 33.) Because these are admittedly work-related injuries, and because the IACA provides the

exclusive remedy for these claims, including any aggravation of these injuries resulting from medical malpractice by prison officials, Treasure is barred from recovery under the FTCA. Thus, these claims must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## II. Other Injuries

Based on the circumstances alleged, the Court assumes for the purposes of this motion that Treasure's remaining claims regarding his enlarged testicle and the fungal infection on his neck are not work-related. (*Id.* ¶¶ 46–47.) Therefore, the IACA does not bar Treasure from recovery under the FTCA for these injuries. However, the Court lacks subject matter jurisdiction over these claims because Treasure has not exhausted his administrative remedies.

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." 🔖 *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing 🔖 *McNeil v. United States*, 508 U.S. 106, 113 (1993); 🔖 *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ). Specifically, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). [3] "For federal inmates, the presentment requirement of the FTCA is accomplished by filing a Form SF-95 with the BOP Regional Office for the facility where the claim arose." 🔖 *Gay v. Terrell*, No. 12-CV-2925 (CBA) (VMS), 2013 WL 5437045, at \*26 (E.D.N.Y. Sept. 27, 2013). "The burden is on the Plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *Vailette v. Lindsay*, No. 11-CV-3610 (NGG) (RLM), 2014 WL 4101513, at \*5 (E.D.N.Y. Aug. 18, 2014) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (alteration in *Vailette* ) (citations omitted) ).

Treasure's amended complaint does not mention any steps taken to exhaust administrative remedies as to either of his non-work-related claims. [4] He states in his opposition brief that he "beg[a]n to exhaust his administrative remedies for these incidents ... by filing a BP-8 form," to which he never received a response. (Pl.'s Mem. at 4.) This is unavailing for two reasons. First, he needs to file form SF-95 rather than form BP-8 to exhaust for purposes of the FTCA. *Warrender v. United States*, No. 09-CV-2697 (KAM) (LB), 2011 WL 703927, at \*6 n.3 (E.D.N.Y. Feb. 17, 2011) (citations omitted). Second, a pending administrative claim is not a final denial by the agency and does not satisfy the administrative exhaustion requirement. 🔖 *Gay*, 2013 WL 5437045, at \*3. Indeed, even where exhaustion occurs during the pendency of an FTCA litigation, the suit must still be dismissed because exhaustion must occur *prior* to filing suit. 🔖 *McNeil*, 508 U.S. at 113. Because Treasure cannot show that, prior to filing this action, he received a final denial after filing an SF-95 form, the Court lacks jurisdiction to hear this claim. [5]

## III. Motion for Stay

**\*4** Because Treasure's FTCA claims have been dismissed for lack of subject matter jurisdiction, "the Court has no authority to stay this proceeding[.]" *Pan Tech Mgmt. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 788 F. Supp. 152, 154 (E.D.N.Y. 1992) (where court lacked jurisdiction over FTCA claim for failure to exhaust administrative remedies). Accordingly, Treasure's motion for a stay is denied as moot.

## CONCLUSION

For the reasons explained above, defendant's motion to dismiss (Doc. No. 31) is granted. Treasure's motion for a stay (Doc. No. 32) is denied as moot.

The Court certifies pursuant to 🔖 28 U.S.C. § 1915(a)(3) that any *in forma pauperis* appeal from this Order would not be taken in good faith. *See* 🔖 *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order and the accompanying judgment to the *pro se* plaintiff at the address listed on the docket, note the mailing on the docket, and close the case.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2019 WL 1243877

## Footnotes

1    The Court may consider exhibits attached to Treasure's original complaint in light of his *pro se* status, notwithstanding the intervening amended pleading. *See Vega v. Duffy*, No. 14-CV-8104 (VSB), 2017 WL 4180020, at *5 (S.D.N.Y. Sept. 20, 2017) (citations omitted).

2    The bulk of Treasure's complaint focuses on the slip-and-fall injuries and is styled as "Count I – Federal Tort Claims Act." (Am. Compl. at 7.)

3    In the event the agency does not respond, "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).

4    Although Treasure provides voluminous exhibits demonstrating his efforts to pursue administrative remedies through the "BP" series of forms in relation to his slip-and-fall injuries, the complaint and exhibits are silent as to his other injuries.

5    The statute of limitations for the FTCA is subject to equitable tolling. *See* ⚑ *United States v. Wong*, 135 S. Ct. 1625, 1633 (2015). If Treasure exhausts his administrative remedies and brings this claim again, he may need to plead facts showing that he is entitled to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (citations omitted).

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.